GEORGE ROBINSON ET AL. *v.* WILLIAM WARD.

1. Under the act of 12th April, 1858 (55 Ohio L. 128), a partnership, engaged in the business of banking, was liable as such to the tax imposed by that act.
2. If the assessor failed to call for the statement of the average value of notes and bills discounted, etc., required by that act, the county auditor was authorized to take the steps requisite to obtain the statement and assess the tax.

ERROR to the district court of Portage county.

The parties, prior to the 8th of May, 1858, had been engaged in the business of banking and brokerage, under the firm name of Robinson, King & Co. On that day, the plaintiff in the action, Ward, retired, under a contract between him and the other partners, by one of the stipulations of which they were " to pay off and discharge all debts and liabilities of said Robinson, King & Co., that have or may accrue, and save him harmless on account thereof."

"No assessor's notice having been left with or presented to said firm, and nothing having been assessed that year, the county auditor, about the middle of June, of that year, gave to. H. Y. Beebe, Esq., the cashier of said firm, a blank for banks of circulation, to be filled by him, for taxation against said firm, which said cashier declined to do. Subsequently, in the latter part of said month of June, said county auditor, in pursuance of instructions from the auditor of state, called on said Beebe, and said he would save him much trouble if he would give him a statement of the amount of each member, proportionate to his stock, of the notes and bills discounted. Thereupon the said Beebe gave to said auditor a statement of the proportionate amount of each member of said firm .(except the said plaintiff) in the notes and bills discounted thereby. He declined giving a like statement of the amount of the plaintiff, but the same was obtained in other ways by said auditor, correctly. And the said auditor then placed upon the tax duplicate an entry," which showed the name of the firm, designated as bankers, the names of each member of the firm, and, in columns op-

posite, his proportion of the tax, and ending, " Total—King, Robinson & Co.," with the aggregate amount.

The taxes, as· shown by the entry, were paid by each of the individuals, severally, as charged upon said duplicate, as the same became due semi-annually.   The said plaintiff having received about eleven thousand dollars for his interest in said firm, when it was dissolved, returned the same, with his other property, to the assessor, and was charged and paid taxes thereon accordingly, otherwise than as charged as aforesaid with said firm.

The plaintiff brought his action to recover the amount of the proportion of the tax of Robinson, King & Co. assessed against him, and paid as before stated, against the other members of that firm.   He recovered judgment in the court of common pleas, and that judgment was affirmed in the district court.·  To reverse this judgment of the district court a petition in error has been filed in this court.

*Luther Day*, for plaintiffs in error.

*Taylor & Willard*, for defendant in error.

GHOLSON, J.—It is a requisition of the constitution, that " the general assembly shall. provide by law for taxing the notes and bills discounted or purchased, moneys loaned, and all other property, effects or dues of every description (without deduction), of all banks now existing, or hereafter created, and of all bankers, so that all property employed in banking shall always bear a burden of taxation equal to that imposed on the property of individuals."   Art. xii, sec. 3.

The legislature endeavored to comply with this. requisition, by an act passed 12th April, 1858.   55 O. L. 128.   Determining that it was not the intention of the constitution to· regard as property subject to be taxed, every note or bill discounted, every sum of money loaned, all effects or dues of every description had or owned by any bank or banker during the fiscal year, the legislature provided:

" To ascertain the amount of notes and bills discounted and purchased, and all other moneys, effects or dues of every

description belonging to such bank or banking company, loaned, invested, or otherwise used or employed, with a view to profit, or upon which such bank or banking company receives, or is entitled to receive interest, * * * there shall be taken as a criterion, the average amount of the aforesaid items for each month during the year next previous to the time of making such statement, if so long such bank or banking company shall have been engaged in business, and if not, then during such time as such bank or banking company shall have been engaged in business; and the average shall be made by adding together the amount so found belonging to such bank or banking company in each month, so engaged in business, and dividing the same by the number of months so added together." Sec. 2.

The first two sections of the act of 12th April, 1858, are in terms only applicable to incorporated banks of circulation; the third section extends to bankers and brokers, and applies the same rule of average value, provided in the second section, which, by a clerical error, was written or printed the twelfth. In this third section, taken alone, there are two matters left in doubt. It refers to individuals only, in connection with the duty of making a statement of the average value of notes and bills discounted, etc., for taxation, and not to partnerships or companies. As said by counsel, the language is: "Every person" engaged in the business of banking, "shall be held to be a banker or broker, and he shall" include in his statement, to the assessor, of his other property, the banking property, "which he shall have had from time to time in his possession, or under his control," during the previous year. But other sections of the act show that the expression, "every person," has not the restricted meaning claimed, but that banking companies or partnerships, as well as their individual members are liable for the tax Thus in the fourth section, it is provided, that if the tax be not paid by the appointed time, the property of the banker, broker, or stockjobber, or partnership, or company of "bankers, brokers or stockjobbers, or of any partner or member thereof," may be distrained and seized. And contemplating

the contingency that in the banking house or office of the partnership or company of bankers or brokers which carried on the business, there might not be found property subject to distress and seizure, it is provided in the sixth section, that in such event, the property of the "banker, broker, stock-jobber, or partnership or company of bankers, brokers or stockjobbers, or of any partner or member thereof," may be distrained and seized. Looking at these provisions, and regarding what would, to all parties interested, be a construction both reasonable and convenient, we think, that the statute required, in case of a company or partnership of bankers, that the statement of average value should be made by such company or partnership. It is a tax so connected with the business of the partnership, to be ascertained, properly and correctly, only by an inspection of its books and papers, that it should be regarded a partnership charge, not only as respects the state, but as between the individuals interested.

From another provision, in the third section, as to the time the statement of the average value is to be furnished to the assessor, it is argued, that the firm was not, at its dissolution, and is not, chargeable with the tax in question, because, none of the steps prescribed by law had been in fact taken to charge the firm with a tax upon the property thereof when it dissolved, and not having been so charged at its dissolution, it could not be afterward.

The fallacy in this argument, is, we think, that it assumes that the property in question to be the subject of tax must be in possession, when the assessor calls for a statement. However this might have been as the law then stood as to other personal property, it clearly was not so, as to what is termed in the argument, banking property. That property is taxed by an average rule, operating from month to month as it may have been held during the previous year, and the statute expressly provides, that the tax upon it is not to be escaped by quitting the business before the end of the fiscal year. This is shown by both the second and third sections. The statement of the banker is to show the average value " during

Robinson et al. *v.* Ward.

the year next previous to the time of making such statement, if so long he shall have been engaged in such business, and if not, then during the time he shall have been so engaged." If a banking company or partnership, having done business during several months of a fiscal year, ceases such business, it can not, under this language, escape the tax, nor can it change what has been shown, from other sections of the law, to be the liability of the firm, into a liability of each individual member for a proportionate share. As to the claim of the state for the tax, the firm must be considered as still in existence, and those winding up its affairs are as much bound to pay such claim as any other debt or liability of the firm.

But, it is said, the assessor never called on the firm for a statement. Surely, if there was a liability for the tax, the omission of the assessor to call for a statement would not operate as a discharge. It is true, there is some ambiguity in the provision of the law which makes it the duty of the county auditor to act as assessor in such a contingency; but it is, we think, sufficient to meet the case. It would be strange indeed, if the omission or neglect of an assessor to call on an owner of personal property for a list, should relieve him from his portion of the burden of taxation. Besides, if there were doubt as to the authority of the county auditor to act where there had been such omission or neglect of the assessor, we should feel authorized to hold that when a firm of bankers, having transacted business for a portion of the year, dissolved their firm and ceased their business, the call of the assessor on the individual members, would make it the duty of those winding up the business to furnish the statement of average value which the law requires.

The statement of facts on which the case was decided, shows that the plaintiff in the action listed for taxation, with his other property, a sum of money received by him for his interest in the firm. We do not see any significance in this fact. That money was not the property for the taxation of which the section of the constitution and the law in question were intended to provide, but the individual property of. the plaintiff, and the very property listed as such for taxation.

In accordance with these views, the judgment of the district court must be affirmed.

Judgment affirmed.

SUTLIFF, C.J., and PECK, BRINKERHOFF and SCOTT, JJ., concurred.